## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID GOLDSTEIN, on Behalf of Himself and All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| vs. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CELGENE CORPORATION, MARK J. ALLES, RICHARD W. BARKER, HANS E. BISHOP, MICHAEL W. BONNEY, MICHAEL D. CASEY, CARRIE S. COX, MICHAEL A. FRIEDMAN, JULIA A. HALLER, PATRICIA A. HEMINGWAY HALL, JAMES J. LOUGHLIN, ERNEST MARIO, and JOHN H. WEILAND, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff David Goldstein ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Celgene Corporation ("Celgene" or the "Company") against Celgene and the members of Celgene's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition of Celgene by Bristol-Myers Squibb Company ("Parent") through Parent's wholly

owned subsidiary Burgundy Merger Sub, Inc. ("Merger Sub," and together with Parent, "BMS") (the "Proposed Transaction").

2.      On January 2, 2019, BMS and Celgene entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each Celgene stockholder will be entitled to receive $50.00 in cash, one share of Parent common stock and one contingent value right ("CVR") for each share of Celgene common stock they own (the "Merger Consideration").  If the Proposed Transaction is completed, BMS stockholders are expected to own approximately 69% of the company, and Celgene stockholders are expected to own approximately 31%.  The Proposed Transaction has an equity value of approximately $74 billion.

3.      On February 1, 2019, in order to convince Celgene's public stockholders to vote in favor of the Proposed Transaction, defendants filed a Form S-4 Registration Statement (as amended on February 1 and February 20, 2019, the "Registration Statement") with the SEC which omits or misrepresents material information concerning the Proposed Transaction.  The failure to adequately disclose such material information renders the Registration Statement false and misleading.

4.      For these reasons, and as set forth in detail herein, Plaintiff alleges that defendants violated Sections 14(a) and 20(a) of the Exchange Act as Celgene stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction currently scheduled for April 12, 2019, unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.       This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.       Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.       Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Celgene.

9.       Defendant Celgene is a Delaware corporation, with its principal executive offices located at 86 Morris Avenue, Summit, New Jersey 07901.  Celgene's common stock trades on the Nasdaq Global Select Market under the ticker symbol "CELG."

10.       Defendant Mark J. Alles is, and has been at all relevant times, a director of the Company.  Defendant Alles also serves as Chief Executive Officer ("CEO") of the Company and as Chairman of the Board.

11.       Defendant Richard W. Barker is, and has been at all relevant times, a director of the Company.

12.       Defendant Michael W. Bonney is, and has been at all relevant times, a director of the Company.

13.     Defendant Michael D. Casey is, and has been at all relevant times, a director of the Company.

14.     Defendant Carrie S. Cox is, and has been at all relevant times, a director of the Company.

15.     Defendant Michael A. Friedman is, and has been at all relevant times, a director of the Company.

16.     Defendant Julia A. Haller is, and has been at all relevant times, a director of the Company.

17.     Defendant Patricia A. Hemingway Hall is, and has been at all relevant times, a director of the Company.

18.     Defendant James J. Loughlin is, and has been at all relevant times, a director of the Company.

19.     Defendant Ernest Mario is, and has been at all relevant times, a director of the Company.

20.     Defendant John H. Weiland is, and has been at all relevant times, a director of the Company.

21.     Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Celgene common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.     The Class is so numerous that joinder of all members is impracticable.  As of January 29, 2019, there were 701,024,507 shares of Company common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  All members of the Class may be identified from records maintained by Celgene or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

25.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

29.     Celgene is an integrated global biopharmaceutical company engaged primarily in the discovery, development and commercialization of innovative therapies for the treatment of

cancer and inflammatory diseases through next-generation solutions in protein homeostasis, immuno-oncology, epigenetics, immunology and neuro-inflammation.

30.     The Company's clinical trial activity includes trials in the disease areas of hematology, solid tumors, inflammation and immunology.  There are more than 300 clinical trials at major medical centers using compounds from Celgene.  Investigational compounds are being studied for patients with incurable hematological and solid tumor cancers, including multiple myeloma, myelodysplastic syndromes, chronic lymphocytic leukemia, non-Hodgkin's lymphoma, triple-negative breast cancer and pancreatic cancer.  Celgene's primary commercial stage products include REVLIMID, POMALYST/IMNOVID, OTEZLA, ABRAXANE, VIDAZA, azacitidine for injection, THALOMID and IDHIFA.

31.     On January 2, 2019, the Board caused the Company to enter into the Merger Agreement with BMS.  On January 3, 2019, Celgene and BMS issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> NEW YORK & SUMMIT, N.J., January 3, 2019 – Bristol-Myers Squibb Company (NYSE:BMY) and Celgene Corporation (NASDAQ:CELG) today announced that they have entered into a definitive merger agreement under which Bristol-Myers Squibb will acquire Celgene in a cash and stock transaction with an equity value of approximately $74 billion. Under the terms of the agreement, Celgene shareholders will receive 1.0 Bristol-Myers Squibb share and $50.00 in cash for each share of Celgene. Celgene shareholders will also receive one tradeable Contingent Value Right (CVR) for each share of Celgene, which will entitle the holder to receive a payment for the achievement of future regulatory milestones. The Boards of Directors of both companies have approved the combination.
>
> The transaction will create a leading focused specialty biopharma company well positioned to address the needs of patients with cancer, inflammatory and immunologic disease and cardiovascular disease through high-value innovative medicines and leading scientific capabilities. With complementary areas of focus, the combined company will operate with global reach and scale, maintaining the speed and agility that is core to each company's strategic approach.

Based on the closing price of Bristol-Myers Squibb stock of $52.43 on January 2, 2019, the cash and stock consideration to be received by Celgene shareholders at closing is valued at $102.43 per Celgene share and one CVR (as described below). When completed, Bristol-Myers Squibb shareholders are expected to own approximately 69 percent of the company, and Celgene shareholders are expected to own approximately 31 percent.

"Together with Celgene, we are creating an innovative biopharma leader, with leading franchises and a deep and broad pipeline that will drive sustainable growth and deliver new options for patients across a range of serious diseases," said Giovanni Caforio, M.D., Chairman and Chief Executive Officer of Bristol-Myers Squibb. "As a combined entity, we will enhance our leadership positions across our portfolio, including in cancer and immunology and inflammation. We will also benefit from an expanded early- and late-stage pipeline that includes six expected near-term product launches. Together, our pipeline holds significant promise for patients, allowing us to accelerate new options through a broader range of cutting-edge technologies and discovery platforms."

Dr. Caforio continued, "We are impressed by what Celgene has accomplished for patients, and we look forward to welcoming Celgene employees to Bristol-Myers Squibb. Our new company will continue the strong patient focus that is core to both companies' missions, creating a shared organization with a goal of discovering, developing and delivering innovative medicines for patients with serious diseases. We are confident we will drive value for shareholders and create opportunities for employees."

"For more than 30 years, Celgene's commitment to leading innovation has allowed us to deliver life-changing treatments to patients in areas of high unmet need. Combining with Bristol-Myers Squibb, we are delivering immediate and substantial value to Celgene shareholders and providing them meaningful participation in the long-term growth opportunities created by the combined company," said Mark Alles, Chairman and Chief Executive Officer of Celgene. "Our employees should be incredibly proud of what we have accomplished together and excited for the opportunities ahead of us as we join with Bristol-Myers Squibb, where we can further advance our mission for patients. We look forward to working with the Bristol-Myers Squibb team as we bring our two companies together."

**Compelling Strategic Benefits**

- **Leading franchises with complementary product portfolios provide enhanced scale and balance.** The combination creates:
  - Leading oncology franchises in both solid tumors and hematologic malignancies led by Opdivo and Yervoy as well as Revlimid and Pomalyst;

- o A top five immunology and inflammation franchise led by Orencia and Otezla; and
- o The #1 cardiovascular franchise led by Eliquis.

The combined company will have nine products with more than $1 billion in annual sales and significant potential for growth in the core disease areas of oncology, immunology and inflammation and cardiovascular disease.

- **Near-term launch opportunities representing greater than $15 billion in revenue potential**. The combined company will have six expected near-term product launches:
  - o Two in immunology and inflammation, TYK2 and ozanimod; and
  - o Four in hematology, luspatercept, liso-cel (JCAR017), bb2121 and fedratinib.

  These launches leverage the combined commercial capabilities of the two companies and will broaden and enhance Bristol-Myers Squibb's market position with innovative and differentiated products. This is in addition to a significant number of lifecycle management registrational readouts expected in Immuno-Oncology (IO).

- **Early-stage pipeline builds sustainable platform for growth.** The combined company will have a deep and diverse early-stage pipeline across solid tumors and hematologic malignancies, immunology and inflammation, cardiovascular disease and fibrotic disease leveraging combined strengths in innovation. The early-stage pipeline includes 50 high potential assets, many with important data readouts in the near-term. With a significantly enhanced early-stage pipeline, Bristol-Myers Squibb will be well positioned for long-term growth and significant value creation.

- **Powerful combined discovery capabilities with world-class expertise in a broad range of modalities.** Together, the Company will have expanded innovation capabilities in small molecule design, biologics/synthetic biologics, protein homeostasis, antibody engineering and cell therapy. Furthermore, strong external partnerships provide access to additional modalities.

**Compelling Financial Benefits**

- **Strong returns and significant immediate EPS accretion.** The transaction's internal rate of return is expected to be well in excess of Celgene's and Bristol-Myers Squibb's cost of capital. The combination is expected to be more than 40 percent accretive to Bristol-Myers Squibb's EPS on a standalone basis in the first full year following close of the transaction.

- **Strong balance sheet and cash flow generation to enable significant investment in innovation.** With more than $45 billion of expected free cash flow generation over the first three full years post-closing, the Company is

committed to maintaining strong investment grade credit ratings while continuing its dividend policy for the benefit of Bristol-Myers Squibb and Celgene shareholders. Bristol-Myers Squibb will also have significant financial flexibility to realize the full potential of the enhanced late- and early-stage pipeline.

- **Meaningful cost synergies.** Bristol-Myers Squibb expects to realize run-rate cost synergies of approximately $2.5 billion by 2022. Bristol-Myers Squibb is confident it will achieve efficiencies across the organization while maintaining a strong, core commitment to innovation and delivering the value of the portfolio.

**Terms and Financing**

Based on the closing price of Bristol-Myers Squibb stock on January 2, 2019, the cash and stock consideration to be received by Celgene shareholders is valued at $102.43 per share. The cash and stock consideration represents an approximately 51 percent premium to Celgene shareholders based on the 30-day volume weighted average closing stock price of Celgene prior to signing and an approximately 54 percent premium to Celgene shareholders based on the closing stock price of Celgene on January 2, 2019. Each share also will receive one tradeable CVR, which will entitle its holder to receive a one-time potential payment of $9.00 in cash upon FDA approval of all three of ozanimod (by December 31, 2020), liso-cel (JCAR017) (by December 31, 2020) and bb2121 (by March 31, 2021), in each case for a specified indication.

The transaction is not subject to a financing condition. The cash portion will be funded through a combination of cash on hand and debt financing. Bristol-Myers Squibb has obtained fully committed debt financing from Morgan Stanley Senior Funding, Inc. and MUFG Bank, Ltd. Following the close of the transaction, Bristol-Myers Squibb expects that substantially all of the debt of the combined company will be pari passu.

**The Registration Statement Contains Material Misstatements or Omissions**

32.    Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Celgene's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek to exercise their appraisal rights.

33.     The Registration Statement omits material information regarding the Company's and BMS' financial projections provided by Celgene's management and relied upon by Celgene's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Citigroup Global Markets Inc. ("Citigroup"), for their analyses, as well as the analyses performed by J.P. Morgan and Citigroup.

34.     With respect to the Company's financial projections, the Registration Statement fails to disclose, for each of the Celgene management case 1, Celgene management case 2, Celgene management case 3 and Celgene blended management case projections: (i) projected earnings per share ("EPS"); (ii) EBITDA; and (iii) the projection line items used to derive the Company's unlevered free cash flows, including taxes, capital expenditures and changes in net working capital and milestone payments.

35.     With respect to BMS' financial projections, the Registration Statement fails to disclose: (i) projected EPS; and (ii) the projection line items used to derive BMS' unlevered free cash flows, including other equity income/royalties; taxes, capital expenditures, changes in net working capital, and milestones and other items.

36.     With respect to J.P. Morgan's Discounted Cash Flow Analysis ("DCF") of Celgene, the Registration Statement fails to disclose: (i) the projection line items J.P. Morgan utilized to calculate unlevered free cash flows; (ii) quantification of the inputs and assumptions underlying the discount rate range of 8.50% to 9.50%; (iii) the Company's estimated net debt as of December 31, 2018; and (iv) the perpetuity growth rates for Celgene implied by the analysis.

37.     With respect to J.P. Morgan's DCF of BMS, the Registration Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 7.25% to 8.25%; (ii) BMS' estimated net debt and minority interests as of December 31, 2018;

(iii) quantification of the potential impact of the UPSA divestiture, as provided by Celgene's management; and (iv) the perpetuity growth rates for BMS implied by the analysis.

38.    With respect to J.P. Morgan's Selected Public Trading Multiples Analysis and Selected Transaction Multiples Analysis of Celgene, the Proxy Statement fails to disclose Celgene's estimated EPS for the calendar year ending December 31, 2019 and estimated EBITDA for the twelve months ending December 31, 2019, utilized in the respective analyses.

39.    With respect to J.P. Morgan's Selected Public Trading Multiples Analysis of Bristol-Myers Squibb, the Proxy Statement fails to disclose BMS' estimated EPS for the calendar year ending December 31, 2019 utilized in the analysis.

40.    With respect to J.P. Morgan's Intrinsic Value Creation Analysis, the Proxy Statement fails to disclose (i) quantification of the inputs and assumptions underlying the discount rate of 9.0%; and (ii) the basis for utilizing a 0.0% terminal growth rate.

41.    With respect to Citigroup's DCF of Celgene, the Registration Statement fails to disclose: (i) the projection line items Citigroup utilized to calculate unlevered free cash flows; (ii) the terminal year estimate of the unlevered free cash flow to be generated by Celgene; (iii) quantification of the inputs and assumptions underlying the discount rate range of 8.3% to 9.5%; (iv) the Company's estimated net debt as of December 31, 2018; and (v) the perpetuity growth rates for Celgene implied by the analysis.

42.    With respect to Citigroup's DCF of BMS, the Registration Statement fails to disclose: (i) the projection line items Citigroup utilized to calculate unlevered free cash flows; (ii) the terminal year estimate of the unlevered free cash flow to be generated by BMS; (iii) quantification of the inputs and assumptions underlying the discount rate range of 7.9% to 9.2%; (iv) BMS' estimated net debt and minority interest as of December 31, 2018; (v) quantification

of the potential impact of the UPSA divestiture, as provided by Celgene's management; and (vi) the perpetuity growth rates for BMS implied by the analysis.

43.    With respect to Citigroup's Selected Public Companies Analysis and Selected Precedent Transactions Analysis of Celgene, the Proxy Statement fails to disclose Celgene's estimated EPS and EBITDA for calendar year 2019 and estimated EBITDA for the twelve months ended December 31, 2019, utilized in the respective analyses.

44.    With respect to Citigroup's Selected Public Companies Analysis of Bristol-Myers Squibb, the Proxy Statement fails to disclose BMS' estimated EPS for calendar year 2019 utilized in the analysis.

45.    With respect to Citigroup's Intrinsic Value Creation Analysis, the Proxy Statement fails to disclose (i) quantification of the inputs and assumptions underlying the discount rates of 9.0% and 7.75%; and (ii) the basis for utilizing terminal growth rates of 2.25%, 1.0% and 0.0% in the analysis.

46.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

47.    The Registration Statement also fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications, when they occurred, and their

content, as well as whether any of BMS' proposals or indications of interest mentioned management retention.

48.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

49.     The omission of the above-referenced material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Celgene's Reasons for the Merger; Recommendation of the Celgene Board of Directors that Celgene Stockholders Adopt the Merger Agreement; (iii) Opinions of Celgene's Financial Advisors; and (iv) Certain Unaudited Prospective Financial Information.

50.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

51.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state

material facts necessary to make the statements therein not materially false or misleading. Celgene is liable as the issuer of these statements.

53.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.   By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

54.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.  The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

55.     The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

56.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm.

### COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

58.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.     The Individual Defendants and BMS acted as controlling persons of Celgene within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their

positions as officers and/or directors of Celgene and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants and BMS was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

62.     BMS also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

63.     By virtue of the foregoing, the Individual Defendants and BMS violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants and BMS had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Celgene, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Celgene stockholders;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  March 6, 2019

By _s/ Daniel Zemel_
_____
Daniel Zemel, Esq.
**ZEMEL LAW, LLC**
1373 Broad St., Suite 203C
Clifton, New Jersey 07013
T: (862) 227-3106
F: (973) 282-8603
DZ@zemellawllc.com